IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HEUBEL MATERIAL HANDLING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10-CV-00102-DGK |
| | ) | |
| UNIVERSAL UNDERWRITERS | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE RAYMOND CORPORATION, and | ) | |
| LIBERTY MUTUAL INSURANCE CO. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## ORDER ON SUMMARY JUDGMENT MOTIONS

This lawsuit is a declaratory judgment action to determine which party is responsible for providing insurance coverage for a lawsuit currently pending in the District of Kansas, *Harris v. Heubel Material Handling, Inc.*, No. 6:09-CV-1136-EFM. Now before the Court is Defendant/Third-Party Plaintiff Universal Underwriters's separate motions for summary judgment against Plaintiff Heubel Material Handling Company, Inc. ("Heubel") (doc. 185); Third-Party Defendant Liberty Mutual Insurance Company ("Liberty") (doc. 187); and Third-Party Defendant The Raymond Corporation ("Raymond") (doc. 189). Also before the Court is Heubel's motion for summary judgment against Universal (doc. 193), Liberty's motion for summary against Universal (doc. 191),[1] and Raymond's motion for summary judgment against Universal (doc. 197).

---

[1] Liberty's motion for summary judgment against Universal is noteworthy because among other arguments it raises, it essentially seeks a coverage declaration on a policy Liberty issued to Raymond. Liberty argues that the excess

Pursuant to Local Rule 7.0(g), the parties have requested oral argument. Seeing no need for oral argument, that request is denied.

The Court holds that because Heubel has materially breached the cooperation clause in the Universal Policy by not permitting Universal to exercise its right to defend the *Harris* suit and by refusing to cooperate with Universal in the pursuit of indemnification from Raymond, Universal has no duty to defend or indemnify Heubel against the *Harris* claim. Accordingly, Universal's motion for summary judgment against Heubel (doc. 185) is GRANTED, and Heubel's motion for summary judgment against Universal (doc. 193) is DENIED.

Additionally, because Universal has no duty to defend or indemnify Heubel for the *Harris* claim, the question whether Universal's policy provides coverage before the Liberty policy or Raymond's Dealer Defense and Indemnification Program is obviously moot. Thus Universal's motions for summary judgment against Liberty (doc. 187) and Raymond (doc. 189) are DENIED AS MOOT, as is Liberty's motion for summary judgment against Universal (doc. 191) and Raymond's motion for summary judgment against Universal (doc. 197).

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby,*

---

policy Liberty issued to Raymond contains an exclusion that precludes coverage for the *Harris* litigation. The Court declines to address this argument, however, because doing so is not necessary to resolve the claims that are properly before the Court. The controversies that are properly before the Court are Plaintiff Heubel's claims against Universal, Universal's counterclaims against Heubel, and Universal's separate claims against Third-party Defendants Raymond and Liberty. Raymond and Liberty have not sued each other, thus there is no controversy between these two that is properly before the Court, and the Court does not issue advisory opinions.

*Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

**Facts**

For purposes of resolving the pending motion, the Court finds the facts to be as follows. Properly controverted facts, facts immaterial to the resolution of the pending motion, facts not properly supported by the cited portion of the record, disputed legal conclusions, and argument presented as proposed facts have been omitted.

**1. Raymond's Dealer Defense and Indemnification Program and the Liberty Policy.**

Third Party Defendant The Raymond Corporation ("Raymond") is a designer and manufacturer of material handling equipment. Plaintiff Heubel Material Handling, Inc. ("Heubel") is an authorized Raymond dealer. While Raymond and Heubel are separate corporate entities, Raymond owns 100% of the stock of Raymond Sales Corporation, which in turn has an ownership interest in Heubel. At the time of the accident involving William Harris,

August 2, 2007, Raymond Sales Corporation owned a minority interest in Heubel. On August 8, 2007, Raymond Sales Corporation increased its ownership interest to 83.8% of Heubel's stock.

As an authorized Raymond dealer, Heubel provides service on Raymond products and participates in the Raymond Dealer Defense and Indemnification Program ("the Dealer Defense and Indemnification Program" or "the Program"). Like other authorized Raymond dealers, Heubel participates in funding the Dealer Defense and Indemnification Program by paying a 2% surcharge on the sale of parts sold by Raymond to Heubel. The Program was in effect in August of 2007.

The funds that Raymond receives from the dealers as part of the Program are not put into a separate account but rather are part of Raymond's general operating fund. When payments are made in connection with the Program, the payments are made out of a Raymond account. When insurance policies are purchased by Raymond in connection with the Program, Raymond pays for those policies and charges.

The Raymond Legal Department is responsible for the Dealer Defense and Indemnification Program. Timothy Koval is currently Chief Legal Officer and Vice President of Raymond and has been employed in Raymond's legal department since 1989. During his time at Raymond, Koval has administered the Program. Koval does not recall Raymond ever submitting a dealer claim to an insurer that Raymond had determined was not covered by the Program, nor does he recall Raymond ever seeking payment from a dealer that would come within a self-insured retention under a policy of insurance purchased in connection with the Program.

The Dealer Defense and Indemnification Program states it is "the policy of Raymond to maintain a product liability and loss prevention defense and indemnification program, mandatory for all Raymond Dealers." It further states:

> It is our policy: . . .
>
> 3. To limit the terms of this coverage to the distribution, sale and/or service of Raymond products only, under the following terms:
>
> In the event a personal injury suit is filed against a Raymond dealership arising from an alleged Raymond product failure, for products other than those owned by the dealership unless such dealer-owned Raymond product is held as part of the dealer's rental fleet, **Raymond or its insurance carrier will pay legal costs incurred in the defense of such suit and**, except for property damages, **will indemnify the dealership, to the fullest extent allowed by law**, in the event of a settlement or adverse judgment, up to the limit of existing coverage.

Page 9.1 (emphasis added).

Third-Party Defendant Liberty Mutual Insurance Company ("Liberty") issued Raymond an insurance policy, policy number EB1-621-093013-027 ("the Liberty Policy"), for the policy period of January 1, 2007 to January 1, 2008. Raymond is the named insured listed in the Liberty Policy. The "Limits of Liability" under the Liberty Policy are $5,000,000 Products/Completed Operations Aggregate and $5,000,000 Each Occurrence. The Liberty Policy also contains a "Self-Insured Retention" of $2,000,000 for Each Occurrence (Raymond Corporation).

The Liberty Policy contains exclusions and exceptions to these exclusions that are relevant to the present case. The Liberty Policy excludes,

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability of damages: . . . (2) Assumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement.

It defines "Insured Contract" as,

> . . . (f) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**2.  Universal's Policy issued to Heubel.**

Richard Brengelman ("Brengelman") is the President and Chief Executive Officer of Brengelman Consulting Group, an insurance consulting company that works for and provides insurance consulting for dealerships. Brengelman worked with Heubel in 2006 to try and obtain insurance. Brengelman put underwriting material together, delivered it to brokers, and sat through the proposals. In the spring of 2006, Brengelman created a document entitled "Heubel Material Handling Inc. Kansas City, MO, Products and Services Provided." Margaret Lee, Heubel's Treasurer, reviewed the document and did not request that any changes be made to the document, nor did she advise that anything in the document was inaccurate. She advised Brengelman that it was okay to give this document to the brokers. Brengelman provided this document to Joe Wilson, an account executive at Universal.

In relevant part, this document states: "A letter from Raymond Corporation regarding their response to 'a loss that involves Raymond Equipment' is included in the packet. Heubel Material Handling is a unique risk; Raymond is part owner of this organization and provides liability coverage for losses related to the Raymond products . . . It is important to note that this coverage extends to 'service work performed by Raymond dealers on Raymond products.' This has to positively impact the completed operations exposure the insurer assumes."

Additionally, a July 5, 2005 letter from Timothy Koval quotes from The Dealer Defense and Indemnification Policy as follows:

> In the event a personal injury suit is filed against a Raymond dealership arising from an alleged Raymond product failure, for products other than those owned by the dealership unless such dealer-owned Raymond product is held as part of the dealer's rental fleet, Raymond or its insurance carrier will pay legal costs incurred in the defense of such suit and, except for property damages, will indemnify the dealership, to the fullest extent allowed by law, in the event of a settlement or adverse judgment, up to the limit of existing coverage.

It also states: "The intent is to provide product liability coverage for the sales and service work performed by Raymond dealerships on Raymond Products." This letter was provided to Defendant Universal by Brengelman in 2006 before the Universal policy was issued.

Defendant Universal issued a liability insurance policy numbered 268791 ("the Universal Policy") with effective dates of June 1, 2007 to June 1, 2008 under which Heubel was a named insured. The Universal Policy states in the General Conditions: "**COMPLIANCE WITH CONDITIONS** – WE have no duty to provide coverage under any Coverage Part unless YOU or any other INSURED have fully complied with all Conditions to that Coverage Part." And in Coverage Part 950 it states:

> WE have the right and duty to defend any SUIT asking for these DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend . . .
>
> **INSURED'S DUTIES AFTER INJURY** . . . (3) **Each INSURED must cooperate and assist US in the** investigation, settlement, **defense**, enforcement of contribution **or indemnification**. The INSURED may not, except at their own expense, make any offer or payment, assume any obligation or incur any expense unless otherwise permitted by this Coverage.

(Emphasis added).

### 3. The *Harris* litigation and subsequent coverage dispute.

On August 2, 2007 William Harris ("Harris") was severely injured while he was operating a Raymond walkie rider[2] that had been serviced by Heubel. He was operating it in a warehouse when the machine allegedly suffered a brake failure and struck a shelving unit stacked with animal feed. The shelving unit buckled, causing the animal feed to fall on Harris.

Heubel submitted a Raymond Accident Report Form about the incident to The Raymond Dealer Defense and Indemnification Program that same day. Raymond received the form on August 3, 2007.

On May 7, 2009, Harris filed suit in the District of Kansas, case number 6:09-CV-1136-EFM (the "*Harris* suit"), alleging he suffered personal injury as a result of Heubel's failure to properly service a Raymond product. Raymond is not, however, a named defendant in the *Harris* suit.

Heubel sent the *Harris* Complaint to Raymond pursuant to its participation in The Dealer Defense and Indemnification Program. The Raymond Dealer Defense and Indemnification Program subsequently hired the law firms of Quarles and Brady, LLP and Martin, Pringle, Oliver, Wallace & Bauer, LLP to defend Heubel in the *Harris* matter. These firms have controlled Heubel's defense throughout the *Harris* litigation. Raymond has administered Heubel's claim in connection with the *Harris* case in accordance with the Program and paid Heubel's attorneys' fees.

Both Heubel and Raymond have refused to allow counsel retained by Universal to control the defense of the *Harris* case. Heubel has allowed counsel hired by Universal to represent Heubel to review discovery and attend depositions in the *Harris* suit. Heubel has not,

---

[2] A walkie rider is similar to a forklift and was allegedly used by Harris to transport pallets of animal feed around the warehouse.

however, filed a third party action for indemnification in the *Harris* suit against Raymond, nor has Heubel requested that Raymond indemnify and/or defend it in connection with the *Harris* suit.

On June 9, 2009 Raymond sent the *Harris* Complaint to Liberty Mutual ("Liberty"). On February 26, 2010, Liberty informed Raymond that it had determined that Heubel did "not qualify as an additional insured under the policy." Liberty stated it had "also determined that The Raymond Corporation is potentially afforded coverage for a contractual liability claim that Heubel Material Handling may assert against The Raymond Corporation." Liberty further stated it "hereby fully and completely reserves its rights under the policy that Liberty Mutual has issued to The Raymond Corporation."

In a December 15, 2009 email from Frank DeAngles of Marsh, Raymond's insurance broker/agent, to Louis Callea, Raymond's general counsel, DeAngles requested a copy of Raymond's defense and indemnification agreement with Heubel. After reviewing these documents, DeAngles sent an email on January 13, 2010 to Craig Bartnik, a Senior Technical Claims Specialist with Liberty, in which he wrote, "Based on these agreements it is clear that Raymond has contractually agreed to defend and indemnify Heubel (dealer)." Callea and Kim Parker, a risk management employee for Raymond, were copied on the email. Raymond never objected to this email, disputed its contents, or sent DeAngles anything stating that Raymond disagreed with DeAngles' statement.

In an email sent May 21, 2010, Liberty agreed that Heubel was an additional insured under the Liberty Policy and rescinded the disclaimer of coverage that was issued February 26, 2010.

Heubel gave written notice to Universal of the *Harris* lawsuit on or about November 18, 2009, over six months after the lawsuit was filed and over five months after it was sent to Liberty Mutual. In a November 23, 2009 letter Universal agreed to defend Heubel subject to a full reservation of rights due to Heubel's failure to timely report the loss. The letter stated, "We understand that this case has been litigated since 5/11/09 and that your attorney has apparently been defending Heubel Material. This claim was not submitted for coverage consideration until 11/18/09, in excess of 6 months after you had notice of this loss." The letter also stated, "If Heubel material has any other liability insurance, such as an excess, umbrella or another policy, you should notify that company immediately and tell us the name, address and policy number of such other insurance."

On or about December 17, 2009, Heubel filed the instant suit in the Circuit Court of Jackson County, Missouri alleging it was entitled under the terms and conditions of the Policy to choose its own independent counsel to defend the *Harris* suit as a result of Universal's reservation of rights letter. On February 3, 2010 Universal removed the case to this Court. In a letter to Heubel dated February 5, 2010, Universal withdrew its reservation of rights. Universal stated it would defend Heubel without reservation, that it would retain the Gilliland, Hayes law firm to defend Heubel, and that it was willing to reimburse Heubel for its reasonable defense costs incurred between the date of November 23, 2009, when the defense under reservation was offered, through February 5, 2010. Heubel has not provided any bills for attorneys' fees for the *Harris* matter to Universal. Universal's letter also reminded Heubel that it had "a duty to cooperate with Universal" in defending against the litigation.

Heubel's Amended Declaratory Judgment Complaint contains two counts. Count I is entitled "Declaratory Relief Against Universal Underwriters Insurance Company" and Count II

is entitled "Breach of Contract." Paragraph 22 of the Complaint alleges Heubel "has no obligation under the Universal policy to seek indemnity under any Raymond indemnity agreement if seeking indemnity prejudices Heubel's position in the underlying *Harris* suit or creates a conflict of interest." Paragraph 17 alleges that, "Universal's requirement that Heubel pursue and enforce indemnity creates a potential or actual conflict of interest between Universal and Heubel and for the counsel that Universal has selected to represent Heubel in the defense of the *Harris* suit." Paragraph 19 alleges that, "By pursuing indemnity under the Raymond indemnity agreement, Universal's selected counsel could be required to take inconsistent or contradictory positions from those Heubel has taken in the defense of the underlying *Harris* suit." Paragraph 20 alleges that, "By taking inconsistent or contradictory positions, Heubel will be prejudiced in the defense of the underlying *Harris* suit." For relief, Heubel seeks: (1) a declaration that Heubel is entitled to coverage under the Universal insurance policy for the *Harris* suit; (2) a declaration that Heubel has not breached the cooperation clause in the Universal policy relating to enforcement of any potential indemnity right under the Raymond indemnity program; (3) a declaration that Heubel is entitled to retain independent counsel to defend it in the *Harris* suit in light of the potential or actual conflict that would exist with Universal's selected counsel seeking indemnity under the Raymond indemnity agreement; (4) a holding that Universal has breached its insurance contract with Heubel; (5) compensatory damages; and (6) attorneys' fees and costs.

On April 21, 2010 Universal filed its Third Party Complaint for Declaratory Judgment against Raymond. In it, Universal seeks declaratory relief, asserting that to the extent that Heubel's claim against Universal in connection with the Harris suit requires Universal to provide any defense and/or indemnity to Heubel, such a duty would only arise after Raymond exhausts

11

its obligation to defend and indemnify Heubel under the Dealer Defense and Indemnification Program.

On May 7, 2010, Universal filed its Answer and Counterclaim for Declaratory Judgment against Heubel. Its Answer denies that Heubel is entitled to the relief sought, and its Counterclaim seeks: (1) A declaration that Heubel has materially breached the cooperation clause in the Universal Policy by not permitting Universal to exercise its right to defend the *Harris* suit; (2) a declaration that Heubel has materially breached the cooperation clause in the Universal Policy by refusing to cooperate with Universal in the pursuit of indemnification from third parties for liability arising from the *Harris* suit; (3) a declaration that Heubel has materially breached the insurance policy and that Universal is thereby discharged from any and all obligations to defend or indemnify Heubel; (4) compensatory damages, including those resulting from Heubel's breach of the policy; and (5) actual attorneys' fees and costs.

On June 30, 2010, Raymond disclosed the identity of its insurer, Liberty, to Universal for the first time by providing a copy of the Liberty Policy in response to a request for production. On September 27, 2010, Universal filed its Third Party Complaint for Declaratory Judgment against Liberty. In it, Universal asks the Court to declare that Heubel is entitled to coverage for the Harris claim under the Liberty Policy because (1) Heubel's indemnification agreement with Raymond constitutes an insured contract covered by the Liberty Policy or, in the alternative, (2) Heubel qualifies as an insured under the Liberty Policy, and for other relief. Universal states that in the event that this Court finds that Universal has a duty to defend or indemnify Heubel, Universal also seeks a declaration that Liberty Mutual's duty to defend and indemnify Heubel against the Harris claim is primary to that of any alleged duty of Universal.

**Discussion**

I.  **Universal is granted summary judgment with respect to all claims between it and Heubel.**

   A.  **Universal has no duty to defend or indemnify Heubel because Heubel failed to cooperate as required by the Universal Policy.**

In the General Conditions portion of the Universal Policy it states that Universal "has no duty to provide coverage under any Coverage Part unless YOU or any other INSURED have fully complied with all Conditions to that Coverage Part." In Coverage Part 950 it also states that,

> WE have the right and duty to defend any SUIT asking for these DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend . . .
>
> INSURED'S DUTIES AFTER INJURY . . . (3) **Each INSURED must cooperate and assist US in the** investigation, settlement, **defense**, enforcement of contribution **or indemnification**. The INSURED may not, except at their own expense, make any offer or payment, assume any obligation or incur any expense unless otherwise permitted by this Coverage.

(Emphasis added).

Under Missouri law "[t]he insurer has the contract right to direct the litigation against its insured." *In re Allstate Ins. Co.*, 722 S.W.2d 947, 952 (Mo. banc. 1987); *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 n.2 (Mo. banc. 1999) ("Depending upon the language of the policy, once an insurer recognizes its right and duty to defend, it usually is afforded control over the litigation to protects its financial interests.") Cooperation clauses are valid and enforceable in Missouri. *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1051 (8th Cir. 2010); *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo. App. 1984). The

insurer's right to control the defense remains even when the insurer initially offers to defend under a reservation of rights, that offer is rejected, and then the insurer agrees to defend without any reservation. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 88 (Mo. App. 1988). To deny liability coverage under a cooperation clause, "an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation." *Med. Protective Co.*, 594 F.3d at 1051.

These elements are satisfied in the present case. First, Heubel has breached the cooperation clause by consistently refusing to allow Universal to control Heubel's defense in the *Harris* lawsuit, even after Universal agreed to defend Heubel without reservation. Heubel has insisted on being represented by Raymond's counsel, refused to request indemnity from Raymond, and most importantly, refused to cooperate with Universal so that a third-party claim of indemnification could be filed against Raymond for the $2 million self-insured retention. Given that Raymond owns 83% of Heubel, it is not surprising that Heubel/Raymond have chosen this course of action, but it is a patent breach of the Universal Policy's cooperation clause.

Second, the breach has substantially prejudiced Universal. By refusing to bring the indemnification claim, Heubel is likely forcing Universal to litigate this case twice, thus exposing it to potentially inconsistent verdicts. That is, after defending Heubel and paying for its liability in the *Harris* case, which could be considerable, Universal would have to file another lawsuit to litigate the indemnification claim against Raymond, thus exposing itself to the possibility of an inconsistent verdict. This is substantial prejudice. *See Hecht v. Summerlin Life and Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008) ("The costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility

of inconsistent verdicts, are not insubstantial or abstract.")  Although Heubel contends Universal has not been prejudiced because the law firm Universal hired to defend Heubel has been permitted to monitor discovery, merely allowing a law firm to monitor discovery is not nearly enough to comply with a cooperation clause.

The Court finds no merit to Heubel's claims that seeking indemnification from Raymond in the *Harris* case is against Heubel's interest because it would be inconsistent with a "uniform defense," would prejudice its position, or would create a conflict of interest.  A claim for indemnification against Raymond in this case is not inconsistent with a "uniform defense."  A claim for indemnification against Raymond asserts only that *if* Heubel is found to be liable against Harris, *then* Raymond is responsible for indemnifying Heubel pursuant to the Raymond Dealer Defense and Indemnification Program.  Heubel would not have to assert that Raymond did anything wrong or that any Raymond product failed.  Consequently, both Heubel and Raymond's defenses would still be aligned if Heubel asserted its indemnification claim.

There is also no merit to Heubel's claims that the Raymond Dealer Defense and Indemnification Program is not an enforceable indemnity agreement or that the subrogation waiver clause in the Universal Policy requires only that Heubel not impair Universal's rights to pursue a claim against a third-party.  As discussed below, the plain language of the Raymond Dealer Defense and Indemnification Program demonstrates that it is an indemnity agreement and it is enforceable.  Also, the Court holds that Heubel's duty of cooperation includes Heubel's enforcement of any indemnification rights Heubel may have against Raymond pursuant to the Universal Policy.  These terms may be separate from other terms relating to Universal's subrogation rights under the policy.

Finally, the Court notes that the third element, whether Universal has exercised reasonable diligence to secure the insured's cooperation, is not in dispute here. Universal has repeatedly communicated its desire that Heubel cooperate in the *Harris* litigation by permitting the attorneys Universal hired to represent Heubel to actually represent it, and that Heubel bring a third-party indemnification claim against Raymond. Heubel is aware of Universal's instructions but has declined to follow them. Consequently, the third element is satisfied.

Because Universal has demonstrated all three elements are present, the Court holds Universal may deny liability coverage in the *Harris* case for Heubel's failure to comply with the policy's cooperation clause. The Court finds Heubel has materially breached the cooperation clause in the Universal Policy by not permitting Universal to exercise its right to defend the *Harris* suit and by refusing to cooperate with Universal in the pursuit of indemnification from third parties for liability arising from the *Harris* suit. The Court further declares that no potential or actual conflict of interest exists prohibiting counsel selected by Universal from seeking indemnity against Raymond, thus Heubel is not entitled to retain independent counsel to defend it in the *Harris* suit.

### B. Because Heubel has breached the insurance contract, Universal has no duty to defend or indemnify Heubel.

Consistent with the above, the Court holds that Heubel has materially breached the insurance policy, therefore Universal is discharged from any obligation to defend or indemnify Heubel for the *Harris* claim.

16
Case 4:10-cv-00102-DGK   Document 260   Filed 03/21/12   Page 16 of 18

**II.     Because Universal has no duty to defend or indemnify Heubel, there is presently no dispute between Universal and Liberty.**

In its claim against Liberty, Universal asks that in the event the Court declares that the Universal policy provides coverage to Heubel for the *Harris* claim, the Court also declare which policy provides coverage to Heubel first, the Universal policy or the Liberty policy purchased through the Dealer Defense and Indemnification Program. Obviously, because Universal has no duty to defend or indemnify Heubel against the *Harris* claim, there is no dispute here.

**III.    Because Universal has no duty to defend or indemnify Heubel, there is presently no dispute between Universal and Raymond.**

Similarly, in its suit against Raymond, Universal asks that if the Court declares that Universal must provide coverage to Heubel for the *Harris* claim, the Court also determine which provides coverage to Heubel first, the Universal policy or any coverage Raymond provides through the Dealer Defense and Indemnification Program. Again, because the Court holds that Universal has no duty to defend or indemnify Heubel, there is no dispute between Universal and Raymond regarding the *Harris* claim.

**Conclusion**

The Court holds that because Heubel has materially breached the cooperation clause in the Universal Policy by not permitting Universal to exercise its right to defend the *Harris* suit and by refusing to cooperate with Universal in the pursuit of indemnification from third parties, Universal has no duty to defend or indemnify Heubel against the *Harris* claim. The Court further holds that no potential or actual conflict of interest exists prohibiting counsel selected by Universal from seeking indemnity against Raymond, thus Heubel is not entitled to retain independent counsel to defend it in the *Harris* suit. Accordingly, Defendant/Third-Party Plaintiff

Universal's motion for summary judgment against Plaintiff Heubel (doc. 185) is GRANTED, and Heubel's motion for summary judgment against Universal (doc. 193) is DENIED.

Furthermore, because Universal has no duty to defend or indemnify Heubel for the *Harris* claim, there is no dispute concerning whether the Universal policy provides coverage before or after any coverage provided by the Liberty policy or Raymond. Accordingly, Universal's motions for summary judgment against Liberty (doc. 187) and Raymond (doc. 189) are DENIED AS MOOT, as is Raymond's motion for summary judgment against Universal (doc. 197).

**IT IS SO ORDERED.**

DATE:  March 21, 2012                                 /s/ Greg Kays
                                                      GREG KAYS, JUDGE
                                                      UNITED STATES DISTRICT COURT